**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Marshall ZEIDMAN and J. O. M. Account Services International, Inc., Defendants-Appellants.**

**No. 76–1173.**

United States Court of Appeals, Seventh Circuit.

Heard June 18, 1976.

Decided Aug. 20, 1976.

Patrick A. Tuite, Chicago, Ill., for defendants-appellants.

Samuel K. Skinner, U. S. Atty., Suzanne B. Conlon, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, PELL and TONE, Circuit Judges.

CUMMINGS, Circuit Judge.

In February 1975, a 13-count mail fraud indictment under 18 U.S.C. § 1341 was returned against J.O.M. Account Services International, Inc. (JOM) and Marshall Zeidman, its president, chief operating officer and controlling shareholder. Count 13 was dismissed on the Government's motion at the close of its case, and the court directed a verdict of acquittal on Count 10. The jury returned a guilty verdict against the defendants on Counts 1, 5, 6, 8 and 12. In effect, Zeidman received concurrent sentences of only six months in a jail-type or treatment institution.[1] JOM was fined $100 on each of the five counts.

The indictment alleged that JOM's principal business was the collection of debts for its clients. The scheme to defraud was said to have commenced in January 1972 and continued until February 1975. Paragraph 3 of the indictment alleged that defendants devised "a scheme and artifice to defraud certain persons of money and property (1) by collecting money from debtors and failing to remit the pre-arranged percentage of the money collected to the defendants' clients and (2) by falsely and fraudulently inflating the indebtedness of debtors through various devices, including but not limited to the addition of fictitious bank service charges, and converting the additional amounts collected from debtors to the defendants' own use and benefit." Each of the 13 counts specified a mailing used in furtherance of the fraud.

*Duplicity of Indictment*

■ Defendants contend that the indictment is partially defective as duplicitous on

the ground that Counts 5, 6 and 12 each allege two separate and distinct schemes to defraud two separate and distinct classes of victims. In response, the Government argues that each of these Counts discloses one scheme to defraud two classes of victims—debtors and creditors—and that the proof thereunder showed that defendants engaged in a single collection scheme to defraud both their creditor-clients and their clients' debtors. Although an indictment is faulty when more than one offense is charged in a single count (*United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975); *United States v. Aldridge*, 484 F.2d 655, 660–661 (7th Cir. 1973), certiorari denied, 415 U.S. 922, 94 S.Ct. 1423, 39 L.Ed.2d 477, it does not suffer from duplicity where only one offense is alleged even if several different acts are specified. *United States v. Astolas*, 487 F.2d 275, 280 (2d Cir. 1973), certiorari denied, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305; *United States v. Amick*, 439 F.2d 351, 358–359 (7th Cir. 1971), certiorari denied, 404 U.S. 823, 92 S.Ct. 48, 30 L.Ed.2d 51.

With a duplicitous indictment there is a possibility of offending the command of the Sixth Amendment that the accused be "informed of the nature and cause of the accusation" and of the Fifth that he not "be twice put in jeopardy." *United States v. Tanner*, 471 F.2d 128, 139 (7th Cir. 1971), certiorari denied, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220. Additional rationale behind the duplicity rule was well stated by Judge Taylor in *United States v. Isaacs*, 347 F.Supp. 743, 755 (N.D.Ill.1972), affirmed, 493 F.2d 1124 (7th Cir. 1974), certiorari denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146, as follows:

"The law forbids the charging of more than one offense in one count of an indictment for two reasons. First, the accused is denied the clear concurrence of all the jurors as to each offense charged as the basis of a conviction. Second, it is

---

1. Although the district court imposed a 3-year concurrent sentence on each of the five counts in question, the execution of two and one-half years of each sentence was suspended on con-dition that Zeidman be confined in a jail-type or treatment institution for a period of six months. He was placed on probation for the remainder of the 3-year concurrent sentences.

impossible for the jury to find him guilty of some offenses charged in the duplicitous count and not guilty as to others".

■ On this basis, defendants assert that Counts 5, 6 and 12 are duplicitous because each separate act charged—defrauding the creditor and defrauding the debtor—constitutes a separate offense. We disagree. Any analysis of whether the acts alleged in an indictment charge more than one offense must start with the statute. To convict under the mail fraud statute (18 U.S.C. § 1341)[2] the Government must prove the existence of a fraud and at least one use of the mails to further the scheme. *United States v. Bush,* 522 F.2d 641, 646 (7th Cir. 1975), certiorari denied, 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748; *United States v. Green,* 494 F.2d 820, 823 (5th Cir. 1974), certiorari denied, 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 280. Each of Counts 5, 6 and 12 charges only one mailing and therefore only one offense. It is true that each of the frauds on the debtors and creditors could constitute a separate offense. However, that is not determinative. Rather, the two acts originate from one transaction, a debt assigned for collection. The frauds were performed by the same parties and have a sufficiently close nexus with one another that they are fairly characterized as one scheme. *United States v. Palladino,* 475 F.2d 65, 74–75 (1st Cir. 1973), vacated on other grounds, 413 U.S. 916, 93 S.Ct. 3066, 37 L.Ed.2d 1038; *Cohen v. United States,* 378 F.2d 751, 754 (9th Cir. 1967), certiorari denied, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215.

Counts 5 and 6 charge that defendants defrauded both Mary Lewis Newman, a debtor, and Aldens Inc.'s credit union, her creditor. The Government's proof showed that Mrs. Newman only owed the credit union $96.42 in September 1972, whereas defendants requested her to pay $136.42 to them to extinguish her indebtedness. She made payments of $66.42 and $20. The proof also showed that defendants never forwarded any portion of Mrs. Newman's payments to the credit union.

With respect to Count 12, Douglas Hanvey was the debtor victim and Karnes Music Co. was the creditor victim. Count 12 describes defendants as the sender of a June 13, 1974, letter to Hanvey. The proof showed that Hanvey owed Karnes Music Co. $187.82, but defendants demanded and received $284 from Hanvey. About a year later, Karnes received a check from defendants for the collection of the Hanvey account but the check was returned by the bank for insufficient funds.

■ The defendants were clearly informed of the nature of the charges against them. Further, as the Government concedes, because the acts are specified, the double jeopardy clause of the Fifth Amendment protects the defendants from being subjected to later mail fraud charges based upon the mailings in these Counts (Br. 10). Nor can the defendants claim prejudice because they are uncertain whether the jury convicted them of defrauding the creditor or debtor. As in the case of a statute which can be violated in different ways, it is sufficient to convict if the jury believes that at least one of the acts of fraud was committed. *United States v. Smith,* 484 F.2d 8, 10 (10th Cir. 1973), certiorari denied, 415 U.S. 978, 94 S.Ct. 1566, 39 L.Ed.2d 874; *United States v. Amick, supra,* 439 F.2d at 358–359. Finally, the indictment cannot be attacked because it would permit a conviction by less than a unanimous jury. The trial judge clearly instructed the jury that they must

2. Section 1341 provides in relevant part:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

not return a guilty verdict unless they all agreed that the defendants had devised a scheme to defraud at least the creditor or the debtor (Tr. 347–349). In view of the substantial evidence showing that both classes were victims, we will not presume that the jury disregarded this instruction.

*United States v. Tanner, supra,* is of no avail to defendants. There Count III of the indictment charged interstate transportation of explosives over a 3-year period in violation of 18 U.S.C. § 837. The Government's bill of particulars under Count III listed a number of separate interstate trips on different dates by different defendants. Consequently, the protection of the Fifth Amendment's double jeopardy clause caused this Court to require a dismissal of that Count as duplicitous. Each of the separate acts of interstate transportation constituted a separate violation of the statute. Finally, in *Tanner* the separate acts were not sufficiently interrelated for the Court to characterize them as part of one scheme. In contrast, the three counts questioned here charged the defendants with closely related specific acts, constituting one scheme to defraud two types of victims with one mailing on a specific date.

 Schemes to defraud by mail often are multi-faceted and therefore the various means used in committing the offense may be joined without duplicity. *United States v. Bush, supra,* 522 F.2d at 646; *Weiss v. United States,* 122 F.2d 675, 680–681 (5th Cir. 1941), certiorari denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550. Here, as seen, the indictment charged "a scheme * * * to defraud" both by inflating the indebtedness of the clients' debtors and failing to remit the remittances to JOM's creditor clients. The one scheme had both effects as charged and as the Government's proof revealed. On their face these Counts cover elements of one offense, so that there was no violation of Rule 8(a) of the Federal Rules of Criminal Procedure. Therefore the district court was not required by Rule 14 to order the Government to elect on which offense it wished to proceed.

*Hearsay Testimony*

In their brief, defendants claim that hearsay testimony was improperly admitted on two occasions at the trial.

 First, Peggy Klein of JOM testified that she sent the sums collected from Hanvey to Karnes Music Co. on August 10, 1974. To rebut that testimony, the Government called Virginia Wagner, assistant to Karnes' credit manager. Referring to Government Exhibit 24–2 for identification, Mrs. Wagner testified it was a Karnes July 1974 collection statement as to Hanvey's debt of $231.21, and that it showed that Karnes did not receive defendants' check therefor until August 19, 1975, and that the check was returned from the bank as lacking sufficient funds. No objection was made to any of Mrs. Wagner's testimony, but defense counsel did cross-examine her and showed that the witness had not personally made the notations on the exhibit. Afterwards Judge Will asked several questions of the witness and then was told by both defense counsel and prosecutor that his interrogation and the witness' responses raised no further question. Since no objection was made pursuant to Rule 51 of the Federal Rules of Criminal Procedure, the district court cannot be faulted for receiving Mrs. Wagner's testimony. In our view, her testimony did not affect the "substantial rights" of the defendant, so that any error in this regard must be deemed harmless under Rule 52 of the Federal Rules of Criminal Procedure.

Secondly, defendants assert that the trial court improperly admitted testimony concerning a record search made under the direction and supervision of Kenneth Spale, Accounts Manager for Aldens Inc. Spale was called by the Government to rebut the testimony of Mrs. Klein that a JOM check for collections from Mrs. Newman may have been misdirected to Aldens Inc. as a "bookkeeping error" instead of to Aldens' credit union. He testified that his files contained the collection statements received from defendants since November 1972, and they were identified as Government Exhibits 22 and 23. He then stated that Aldens

Inc. never received defendants' collection statements (their Exhibits 7 and 8) for Mary Newman and never transmitted an account in her name to defendants for collection. Over a hearsay objection, Spale was then permitted to testify that the supervisor who worked directly under him made the file search of Aldens Inc. at his direction and reported there was no record of monies collected from Mrs. Newman by defendants. Spale described this "as a normal search" of his files.

Spale's testimony is admissible under defendants' own interpretation of Rule 803(7).[3] With respect to this Rule, defendants assert "There must be at least some first-hand testimony regarding the records or production of the log or journal in which the entry is absent" (Br. 34). Because these exhibits were received in evidence (Tr. 302), this alternative test was satisfied.

*Testimony of Prior Similar Act*

Defendants' former employee, Terry Netsky, testified about a similar incident involving defendant Zeidman in May 1967, five years before the first period covered by the indictment. The substance of the testimony was that although Zeidman received $900 from the debtor, he told his creditor-client that he had received only $200 and then said to Netsky: "We just made $700. This is like finding it on the floor." (Tr. 12.)

Defense counsel objected to Netsky's testimony because it antedated the indictment by five years. It was not too stale. After the prosecutor stated that the testimony was being "submitted to show pattern and intent of the defendant [Zeidman]," Judge Will permitted Netsky to proceed with his testimony. Similarly, in his instructions to the jury, the district judge warned that this testimony was received

only "to establish a pattern or course of conduct or action, or attitude, state of mind, intention, and so forth." This evidence was admissible under the tests we recently reiterated in *United States v. Feinberg,* 535 F.2d 1004, 1009 (7th Cir. 1976) (No. 75–1762, slip op. at 8), and was explicitly made admissible by Rule 404(b) of the Federal Rules of Evidence.

Judgments Affirmed.

---

**3.** Rule 803(7) provides:

"*Absence of entry in records kept in accordance with the provisions of paragraph (6).* Evidence that a matter is not included in the memoranda, reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness."