*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0283p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 04-3469

RONALD D. GRENOBLE,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00807—David A. Katz, District Judge.

Argued: March 16, 2005

Decided and Filed: June 29, 2005

Before: DAUGHTREY and CLAY, Circuit Judges, SCHWARZER, Senior District Judge.[*]

---

## COUNSEL

**ARGUED:** James J. West, WEST LONG LLC, Harrisburg, Pennsylvania, for Appellant. Thomas A. Karol, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee. **ON BRIEF:** James J. West, WEST LONG LLC, Harrisburg, Pennsylvania, for Appellant. Thomas A. Karol, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee.

---

## OPINION

---

WILLIAM W SCHWARZER, Senior District Judge. Ronald Grenoble appeals his convictions, after a jury trial, of conspiracy to commit wire fraud and wire fraud under 18 U.S.C. §§ 371 and 1343, respectively. He maintains that venue in the Northern District of Ohio was improper as to the wire fraud count and that the district court erred in denying his motion to dismiss the conspiracy count against him based upon the expiration of the applicable statute of limitations. Grenoble also appeals his sentence. For the reasons set forth below, we affirm Grenoble's convictions but remand his case for resentencing.

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

## BACKGROUND

On December 4, 2002, Grenoble and Donald Calhoun were indicted on two counts: conspiracy to commit wire fraud and wire fraud, in violation of 18 U.S.C. §§ 371 and 1343. The indictment alleged that both of the offenses charged took place "in the Northern District of Ohio . . . and elsewhere." According to the indictment, a group of conspirators including Grenoble solicited investors in a fraudulent investment program and then diverted the funds obtained from the investors to the coconspirators' personal use.

In Count One, the indictment alleged that the conspiracy had taken place from "in or about March, 1996, to in or about June, 1998." (The same dates appear in the allegations of wire fraud in Count Two of the indictment.) The dates of the specific overt acts in furtherance of the conspiracy alleged in Count One varied from this time frame, however; no overt act was alleged to have occurred before April 1996 or after January 1997.

The first overt act alleged in connection with Count One, the conspiracy count, was an April 1996 meeting between an unindicted coconspirator named Walter Metcalf and a group of potential investors. At the meeting, the victims were told about investment opportunities with an entity called Syzygy, LLC. Metcalf and Grenoble, the latter via telephone, represented themselves to the victims as coowners of Syzygy. Following this meeting, the investor-victims formed an investment partnership in Huron, Ohio. The coconspirators had the victims wire the partnership's funds from an account at a bank in Columbus, Ohio, to an account at a bank in New York City. From there, the coconspirators wired the funds to other banks in Canada and California. The overt acts alleged in Count One continued nearly to the end of 1996, with one additional act alleged to have occurred in January 1997. On or about December 13, 1996, Calhoun was alleged to have written checks from an account in Altadena, California, for his personal use. Then, in January 1997, according to the indictment, Grenoble had a conference call with a victim during which Grenoble represented a third party to be Deputy Director of the United States Treasury, and both Grenoble and the third party assured the victim that his investment proceeds were forthcoming.

Before trial, Grenoble moved to dismiss the indictment, partly on the basis that the applicable five-year statute of limitations, 18 U.S.C. § 3282, had run before the filing of the indictment. The magistrate judge denied the motion, holding that 18 U.S.C. § 3292, which permits the tolling of the statute of limitations between the request and receipt of evidence from a foreign country, made the indictment timely. In reaching this conclusion, the magistrate judge concluded that the conspiracy in this case had achieved its objective, and the statute of limitations had begun to run, no later than August 1996. Upon Grenoble's appeal of this ruling, the district court adopted the magistrate judge's report and denied Grenoble's motion to dismiss.

Grenoble's jury trial began on December 8, 2003. On December 9, during trial, the government moved to have the district court strike from Count One of the indictment the paragraph describing the January 1997 overt act and to substitute August 1996 for the June 1998 termination date appearing in the description of the conspiracy. Grenoble did not object to the district court order adopting these changes.

Following the government's presentation of its case, Grenoble moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal on Count Two of the indictment, the wire fraud count, on the ground that as to that count the government had failed to prove any basis for venue in the Northern District of Ohio. The district court denied the motion.

On December 10, 2003, the jury returned verdicts against Grenoble on both counts. On March 29, 2004, the district court sentenced Grenoble to 37 months' imprisonment on each count, the terms to run concurrently, and to three years of supervised release. It also ordered restitution in the amount of $145,000. Grenoble timely appealed his convictions and sentence.

## STANDARDS OF REVIEW

"We review *de novo* the trial court's denial of a motion for judgment of acquittal.  In conducting this review, we view the evidence in the light most favorable to the prosecution, and inquire whether a rational trier of fact could find that venue is proper.  The Government's showing on this point need only be supported by a preponderance of the evidence."  *United States v. Zidell*, 323 F.3d 412, 420-21 (6th Cir. 1003) (citations omitted).

We also review de novo challenges to the sufficiency of an indictment.  *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999).  A motion to dismiss based on the statute of limitations is such a challenge.  *See United States v. Pi*, 174 F.3d 745, 750 (6th Cir. 1999).

## DISCUSSION

Grenoble argues on appeal that (1) the district court erred in denying his motion for judgment of acquittal on Count Two on the basis of lack of venue; (2) the district court erred in denying his motion to dismiss Count One on the ground that the statute of limitations barred the prosecution; and (3) the district court erred in sentencing Grenoble under a mandatory federal Sentencing Guidelines regime.  These arguments are addressed in turn below.

## I.     VENUE

Grenoble argues that although Count Two of the indictment alleges that "in the Northern District of Ohio" he "did knowingly transmit and cause to be transmitted communications by means of wire communications in interstate and foreign commerce" in violation of 18 U.S.C. § 1343, the government produced no evidence that he had caused a wire transfer through the Northern District of Ohio.  Thus, according to Grenoble, the government did not prove venue in the Northern District of Ohio as to Count Two.  The government responds that Grenoble waived this argument by failing to raise it in a pretrial motion and, in the alternative, that the government did show that part of the charged offense occurred in the Northern District of Ohio.

Grenoble did not waive this argument.  Although objections to defects in venue are usually waived if not asserted before trial, *see United States v. Adams*, 803 F.2d 722, 1986 WL 17714, at **9 (6th Cir. Sept. 22, 1986) (unpublished op.), where the defect is not "apparent on the face of the indictment," *United States v. Hill*, 891 F.2d 293, 1989 WL 146502, at **3 (6th Cir. 1989) (unpublished op.), and the defendant does not have notice of the defect through other means, a conclusion of waiver is not appropriate, *see id.*; *Adams*, 1986 WL 17714, at **9 (citing *United States v. Black Cloud*, 590 F.2d 270, 272 (8th Cir. 1979)).  As noted above, Count Two of Grenoble's indictment alleged that "in the Northern District of Ohio" he "did knowingly transmit and cause to be transmitted communications by means of wire communications in interstate and foreign commerce."  Any defect in venue was therefore not apparent from the indictment itself, and the record contains no indication, nor has either party argued, that Grenoble otherwise had notice of any defect in venue.  Accordingly, Grenoble did not waive this argument.

However, contrary to Grenoble's contentions, the government did carry its burden of showing venue with respect to Count Two.  The wire fraud statute under which Grenoble was charged in Count Two provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money by false or fraudulent pretenses, representations, or promises, *transmits or causes to be transmitted* by means of wire . . . communication in interstate or foreign commerce, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343 (emphasis added). Under 18 U.S.C. § 3237, wire fraud is a continuing offense crime: "Any offense involving . . . transportation in interstate or foreign commerce . . . is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves." *Id.* § 3237(a); *United States v. Goldberg*, 830 F.2d 459, 465 (3d Cir. 1987). As noted, the government need only present proof sufficient to allow a rational trier of fact to conclude that venue was proper by a preponderance of the evidence. *Zidell*, 323 F.3d at 420-21.

At trial, the government presented evidence that Grenoble and others, doing business as Syzygy, LLC, "transmitt[ed] or cause[d] to be transmitted" faxes to victims in the Northern District of Ohio. 18 U.S.C. § 1343. There was evidence that these contacts induced the victims to create an investment partnership that deposited in an Ohio bank account funds eventually acquired by Grenoble and his coconspirators.[1] This was ample evidence to permit a rational trier of fact to conclude that Grenoble had transmitted into the Northern District of Ohio wire communications "for the purpose of executing" a fraudulent "scheme or artifice." 18 U.S.C. § 1343. The evidence was sufficient to support venue in the Northern District of Ohio, and we affirm the district court's denial of Grenoble's Rule 29 motion on this basis.

## II.    STATUTE OF LIMITATIONS

Before trial, Grenoble moved to dismiss the indictment in part on the basis that it was barred by the five-year statute of limitations in 18 U.S.C. § 3282.[2] Count One of the indictment alleged conduct ending "in or about June, 1998" but alleged no overt act in furtherance of the conspiracy after January 1997. The indictment was entered December 4, 2002. "[N]ormally the date of the last overt act in furtherance of the conspiracy alleged in the indictment begins the clock for purposes of the five-year statute of limitations." *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999). Under this rule the statute would have run by January 2002, barring prosecution for Count One.

The magistrate judge in Grenoble's case denied his motion to dismiss, finding as to Count One that the objectives of the conspiracy alleged had, according to the indictment, been completed no later than August 1996, when the last portion of the victims' funds was placed at the coconspirators' disposal, and that the government had properly moved, in March 2000, to toll the five-year statute of limitations under 18 U.S.C. § 3292, pending the government's receipt of evidence from Canada.[3] The consequences of these

---

[1]Given this evidence, we cannot accept Grenoble's argument that *United States v. Wood*, 364 F.3d 704, 713 (6th Cir. 2004), requires us to find venue improper in this case. In *Wood*, we held that "venue in a mail fraud case is limited to districts where the mail is deposited, received, or moves through, even if the fraud was elsewhere." *Id.* We found venue improper there because the only evidence linking the fraud at issue to the relevant district indicated that fraudulent checks had been drawn on a bank account located in the district and a single witness opined that some of the checks were "probably" written in the district. Neither fact indicated any connection between mailings and the district. *Id.* at 713-14. We also rejected the government's argument that it need not prove that any particular mailings had moved in, through, or from the district if it showed that the district had a significant enough relation to the offense overall. *Id.* at 711-13. In the present case, in contrast, the government presented ample evidence of wire transmissions integral to the charged crime into the Northern District of Ohio. Assuming for the sake of argument that, as Grenoble contends, the mail fraud standard from *Wood* should apply in the wire fraud context, *Wood* requires us to conclude that venue was proper in this case.

[2]Grenoble's original motion to dismiss requested dismissal of the entire indictment. He appeals the district court's denial of this motion only as to Count One.

[3]This section provides, in pertinent part:

(a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court . . . shall suspend the running of the statute of limitations for the offense . . . .

(c) The total of all periods of suspension under this section with respect to an offense—

two findings were as follows: (1) absent tolling, if the five-year statute of limitations began running no later than August 1996 it would have run by August 2001 at the latest; (2) the government's March 2000 motion under § 3292 served to toll the statute at that point, with at least fifteen months remaining in the limitations period; (3) the government received the requested evidence from Canada on November 21, 2001, after the latest date (August 2001) on which the limitations period could have expired had it not been tolled; (4) therefore, pursuant to § 3292(c)(1), the statute of limitations had been tolled for the entire period between March 2000 and November 2001; and, accordingly, (5) when the period started running again in November 2001 the government had at least fifteen months remaining to bring its indictment. Since the indictment was entered thirteen months later, it was timely.

As noted above, during trial the court also granted the government's motion to strike the paragraph of the indictment identifying a January 1997 telephone conversation involving Grenoble as one of the overt acts in furtherance of the conspiracy alleged. Further, at the government's request, the court ordered that an ending date of August 1996 be interlineated in the indictment's general description of the conspiracy. Grenoble did not oppose these orders.

On appeal, Grenoble argues (1) that the district court erred in concluding that the indictment alleged a conspiracy completed no later than August 1996 and, more specifically, that it erred in characterizing the January 1997 telephone call as a postconspiratorial concealment action, *see Grunewald v. United States*, 353 U.S. 391, 399-400 (1957), rather than a "lulling" call, *United States v. Daniel*, 329 F.3d 480, 489 (6th Cir. 2003), in furtherance of the conspiracy; and (2) that these conclusions and the District Court's order altering the indictment violated the Fifth Amendment's grand jury guarantee. Neither argument has merit.

A.   *Distinction Between Postconspiratorial Concealment Acts and Lulling Conversations*

Grenoble's first argument depends on his contention that *Daniel* dictates that "lulling" calls—calls "designed to lull the victims [of a fraudulent scheme] into a false sense of security," *United States v. Lane*, 474 U.S. 438, 451 (1986)—can mark the ending of a conspiracy for purposes of triggering the running of a statute of limitations. This contention misconstrues *Lane*, *Daniel*, and other cases following their reasoning. In none of the "lulling theory" fraud cases is the central issue the duration of a conspiracy. Rather, all of these cases address whether proof of lulling communications suffices to support conviction under the mail or wire fraud statutes. 18 U.S.C. §§ 1341, 1343. The cases conclude that lulling communications made by defendants after they have fraudulently obtained funds or goods may nevertheless be closely enough related to the defendants' fraudulent schemes that the communications can support conviction under the fraud statutes, where there is no other proof of use of the mails or wires in interstate commerce.[4]

---

(1) shall not exceed three years; and
(2) shall not extend a period under which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

18 U.S.C. § 3292.

**4**
*Lane* was a mail fraud case in which the only mailings followed the defendants' receipt of fraudulently obtained funds. 474 U.S. at 451-52. The Court held that even "[m]ailings occurring after receipt of the goods obtained by fraud are within the [mail fraud] statute if they 'were designed to lull the victims into a false sense of security, postpone their complaining to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.'" *Id.* (quoting *United States v. Maze*, 414 U.S. 395, 403 (1974)). Thus, evidence of the letters supported the defendant's conviction under the statute. *Lane*, 474 U.S. at 453.

*Daniel*, a wire fraud case, involved facts otherwise very similar to those of *Lane*. The defendant argued that the evidence was insufficient to support his conviction under the wire fraud statute. *See* 329 F.3d at 489. The government had shown only one use of interstate wires by the defendant: a fax he sent "to elicit a letter that would apparently authorize his actions" after he had already obtained all of the funds concerned. *Id.* We concluded that this fax, despite its timing, was nevertheless "sufficiently related," *id.*, to the scheme to defraud to be evidence of the defendant's use of the wires "for the purpose of executing" the overall

The distinction between the jurisdictional issue addressed in these cases and the issue of the duration of a conspiracy is important. The Supreme Court has expressly rejected the argument that communications made solely to conceal fraud can extend the duration of a conspiracy for purposes of computing a limitations period. *Grunewald*, 353 U.S. at 397-406. In the statute of limitations context, instead, "the crucial question . . . is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether [an] act . . . may properly be regarded as in furtherance of the conspiracy." *Id.* at 397. The focus in this analysis is not on whether an act is simply related to the central scheme to defraud, as it is in the lulling theory cases. On the contrary, "acts of concealment done after the[] central objectives [of a conspiracy] have been attained, for the purpose only of covering up after the crime," while clearly related to the conspiracy, should not be considered acts "in furtherance" of the conspiracy for purposes of computing the limitations period. *Id.* at 405. Such "acts of concealment" include acts of misrepresentation to the victim for purposes of keeping the fraud from coming to light—that is, lulling communications.[5] *See id.* at 395-96. The *Grunewald* rule has a logical basis: Since every conspiracy "will inevitably be followed by actions taken to conceal the conspirators' traces," considering concealment actions to be overt acts for purposes of computing limitations periods would "extend the life of a conspiracy indefinitely," making statutes of limitations meaningless in conspiracy prosecutions. *Id.* at 402.

This *Grunewald* rule squarely applies to the present case and requires us to reject Grenoble's argument that we should consider the January 1997 phone call an overt act in furtherance of the conspiracy for purposes of computing the limitations period in his case. For identical reasons, the magistrate judge and district court did not err in finding that despite the indictment's allegation of a January 1997 overt act, the conspiracy alleged in the indictment had concluded by August 1996 at the latest, since it was sometime during the summer of 1996 that the funds at issue were allegedly placed at the defendants' disposal and the objectives of the conspiracy to commit wire fraud were achieved. *See Grunewald*, 353 U.S. at 401-02.

B.      *Alteration of the Indictment*

The district court also did not err in correcting the indictment to reflect the above finding. Although "normally the date of the last overt act in furtherance of the conspiracy alleged in the indictment begins the clock for purposes of the . . . statute of limitations," *Smith*, 197 F.3d at 228, where the indictment alleges overt acts that cannot by law be considered "in furtherance of" the charged conspiracy, the court does not err in omitting those acts from its calculation of the limitations period. *Grunewald*, 353 U.S. at 394, 396-97 (refusing to consider overt acts charged in indictment in computing limitations period, where acts charged postdated the achievement of the conspiracy's aims). A court does not err in ignoring irrelevancies in or striking surplusage from an indictment.[6] *United States v. McGuire*, 744 F.2d 1197, 1206 (6th Cir. 1984) (holding that striking surplusage from an indictment is permissible); *see also United States v. Miller*, 471 U.S. 130, 144 (1985) (rejecting argument that judicial narrowing of the indictment constitutes an amendment that renders the indictment void).

The district court in this case correctly applied the law in finding that according to the indictment the conspiracy charged in Count One reached its objective no later than August 1996 and that the count had

---

scheme and therefore could support the defendant's conviction under the wire fraud statute. 18 U.S.C. § 1343.

[5]In *Grunewald*, a tax fraud case, the victims were the Internal Revenue Service and the federal government, and the concealment actions included doctoring IRS reports. 353 U.S. at 395.

[6]Grenoble contends that judicial striking of matter from an indictment is per se a violation of his Fifth Amendment grand jury right. His argument fails because this right exists to protect defendants from judicial broadening of the charges in their indictments, that is, from conviction on the basis of judicial allegations of facts never presented to a grand jury, *see Miller*, 417 U.S. at 138-44; *Stirone v. United States*, 361 U.S. 270, 218-19 (1960), and is not violated when a court merely narrows the scope of an indictment to reflect the law, as here. *See McGuire*, 744 F.2d at 1206; *Miller*, 471 U.S. at 144.

been brought within the applicable limitations period and did not err in correcting the amendment to reflect this fact. Accordingly, we affirm the denial of Grenoble's motion to dismiss on this basis.

## III.    SENTENCING

Grenoble argues that the district court erred in sentencing him under a mandatory federal Sentencing Guidelines regime. He requests that we remand his case for resentencing under the advisory Guidelines regime established by *United States v. Booker*, 125 S. Ct. 738 (2005). Under current Sixth Circuit law we must grant this request.

Although he raised the issue in his initial brief on appeal, it does not appear that Grenoble argued the advisory nature of the Guidelines before the district court, so our review is for plain error. *United States v. Oliver*, 397 F.3d 369, 377 n.1 (6th Cir. 2005). We have held that under *Booker* a district court's treatment of the Guidelines as mandatory is plain error because *Booker* effected a clear change in the law. *United States v. Barnett*, 398 F.3d 516, 525-26 (6th Cir. 2005). Moreover, we may assume prejudice in a situation like the present case, where a court has sentenced the defendant at the bottom of the applicable Guidelines range; such a sentence leaves open the possibility that the court might have imposed a lower sentence had it viewed the Guidelines as advisory.[7] *Id.* at 527-28. We therefore remand this case for resentencing under an advisory Guidelines regime. *Id*. at 531.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the District Court's denial of Grenoble's motions to dismiss and for judgment of acquittal but **VACATE** his sentence and **REMAND** his case for resentencing under *Booker*, 125 S. Ct. 738.

---

[7]The District Court noted at Grenoble's sentencing hearing that the range of imprisonment applicable to him under the Guidelines was 37 to 46 months, and it sentenced him to 37 months' imprisonment.