UNITED STATES of America, Plaintiff–Appellee,

v.

Estell McCALL, Defendant–Appellant.

No. 95–3047.

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 29, 1996.

Decided June 6, 1996.

Thomas M. Bauer, Asst. U.S. Atty., briefed, Office of the U.S. Atty., Akron, OH, for Plaintiff–Appellee.

Carolyn Kaye Ranke, briefed, Cleveland Heights, OH, for Defendant–Appellant.

Before: NELSON, NORRIS, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Defendant Estell McCall appeals his conviction and sentence for armed bank robbery, a violation of 18 U.S.C. § 2113. His primary argument is that the district court erred in failing to instruct the jury regarding his alibi defense, even though he did not request such an instruction at trial. In addition, McCall raises sundry challenges to the sufficiency of the evidence at trial, the order of proof, and the enhancement of his sentence for brandishing or displaying a firearm. For the rea-

sons that follow, we affirm the district court's judgment in its entirety.

## I. BACKGROUND

In September 1992, an unmasked man wearing a dark baseball cap robbed the Tallmadge, Ohio branch of the Union Federal Savings Bank. The man displayed what appeared to be a revolver to the two tellers on duty and ordered them to fill his gym bag with money. As they complied, the tellers activated a security camera, which took pictures of the robbery in progress. In addition, the tellers placed some "bait money" in the gym bag, consisting of fifty-dollar bills with pre-recorded serial numbers. After the bag was filled, one of the tellers observed the robber leave the bank, enter the parking lot, and duck behind a row of parked cars. Moments later, both tellers and the branch manager saw a "brown or maroon" sedan with large, square taillights pull out of the same parking area and exit the lot.

After initial inquiries, local and federal authorities began to focus their investigation on McCall, who had been living in a nearby halfway house and who had signed out of the house on the day of the robbery. Further investigation revealed that McCall's mother, Phyllis Brown, also lived nearby and that her car matched the description of the car leaving the bank. Brown consented to a search of her car, which yielded a dark baseball cap. In addition, Brown told the FBI that she had allowed her son to use the car on the morning of the robbery. From McCall's fiancée, Silenthia Brown, the FBI recovered several fifty-dollar bills given to her by McCall that turned out to be some of the bait money. The federal authorities arrested McCall, who was then indicted for armed bank robbery, a violation of 18 U.S.C. § 2113(a) and (d), and using or carrying a firearm in the commission of a crime of violence, a violation of 18 U.S.C. § 924(c). No gun was ultimately recovered, however.

At trial, one of the tellers, Beverly Hutchens, directly identified McCall as the robber. She also testified that Brown's car, shown in photographs, appeared to be the car she had seen leaving the parking lot. Finally, she and the other teller, Georgina Ansell, identi-fied the baseball cap found in Brown's car as the one worn by the robber. The government then called Daryl Rocklin, a worker at McCall's halfway house, and Michael Phillips, an FBI agent, to testify regarding the recovered bait money. According to Rocklin, McCall had left an envelope containing $900 in cash for Silenthia Brown. According to Phillips, it was later determined that this cash included numerous bills that had been pre-recorded as bait money. As the government pointed out at trial, McCall did not earn any money from his sales job with Encyclopedia Britannica, and so the $900 he left for his fiancée could only serve to compound any suspicion that he might be the bank robber.

McCall's sole defense was an alibi. Although the robbery had taken place at about 11:40 a.m., Phyllis Brown testified that her son had been home with her between 11:30 a.m. and 12:00 p.m. that day. The government attempted to impeach this testimony by recalling Agent Phillips, who testified that Brown had previously told him that her son had used the car between 11:20 a.m. and 2:00 p.m. The defense objected at trial to this rebuttal testimony, but it did not recall Brown as a surrebuttal witness.

The jury found McCall guilty of bank robbery and not guilty of the separate § 924(c) firearm charge. The district court then sentenced him to 150 months in prison. In calculating McCall's offense level under the sentencing guidelines, the court included a five-level enhancement for brandishing, displaying, or possessing a firearm during commission of the offense, under U.S.S.G. § 2B3.1(b)(2)(C). McCall objected, but the district court explicitly credited the tellers' testimony that McCall had held what appeared to be a real gun.

## II. THE ALIBI JURY INSTRUCTION

McCall's alibi was his exclusive defense, yet he never requested an alibi jury instruction at trial. On appeal, McCall now argues that the district court's failure to provide such an instruction, sua sponte, merits a reversal. In general, a defendant may assign error to the omission of a criminal

jury instruction only when the defendant has requested the instruction and objected to its omission before submission of the case to the jury. *See* Fed.R.Crim.P. 30. If the defendant has failed to request a particular instruction or object to its omission, this court reviews the omission only for plain error. *See United States v. Sanchez,* 928 F.2d 1450, 1456 (6th Cir.1991); *United States v. Hamilton,* 684 F.2d 380, 385 (6th Cir.), *cert. denied,* 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982).

We recognize that this court has previously held that the failure to give an alibi instruction may be plain error when appropriate alibi evidence has been presented. *See Hamilton,* 684 F.2d at 385. We note, however, that in *Hamilton,* the defendant made a clear request for an alibi instruction, and the district court simply failed to include it, without explanation. Although the *Hamilton* panel observed that the defendant should have specifically objected to the omission, it concluded that the district court's failure to include the instruction was nonetheless plain error, given the defendant's explicit request. In the instant case, by contrast, McCall never once alerted the district court to the need for an alibi instruction. In other words, not only was the district court deprived of an adequate opportunity to correct any potential mistake by McCall's failure to object, but also the district court was deprived of the knowledge that defendant even desired an alibi instruction by McCall's failure to request one. Given that the primary function of the alibi instruction is to remind the jury as to the government's burden of demonstrating all elements of the crime beyond a reasonable doubt, including defendant's presence at the crime scene, *see* District Judges Association of the Sixth Circuit, *Pattern Criminal Jury Instructions,* 6.02 (1991),[1] given that the district court here did charge the jury that "[t]he government must prove every element of the crimes charged beyond a reasonable doubt," Tr. at 225, and given that McCall argued in his closing that the

government had failed to prove his presence at the bank beyond a reasonable doubt, Tr. at 207, we conclude that the omission in the instant case did not rise to the level of plain error.

■ We note that the federal circuits are not in agreement as to whether the failure to give a requested alibi instruction is reversible error. *Compare Hamilton and United States v. Zuniga,* 6 F.3d 569, 571–72 (9th Cir.1993) *with United States v. Laury,* 49 F.3d 145, 152 (5th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 162, 133 L.Ed.2d 105 (1995), *and United States v. Agofsky,* 20 F.3d 866, 872 (8th Cir.), *cert. denied,* — U.S. —, —, 115 S.Ct. 280, 363, 130 L.Ed.2d 196, 316 (1994). However, all courts are in agreement that the failure to give an *unrequested* alibi instruction should not be deemed plain error. *See Goldsby v. United States,* 160 U.S. 70, 77, 16 S.Ct. 216, 219, 40 L.Ed. 343 (1895); *United States v. Atkins,* 487 F.2d 257, 259 (8th Cir.1973); *United States v. Bynum,* 485 F.2d 490, 503 (2d Cir. 1973), *vacated on other grounds,* 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974); *United States v. Harris,* 458 F.2d 670, 678 (5th Cir.), *cert. denied,* 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972). We follow these decisions and hold that omission of the instruction is not plain error, as long as the jury is otherwise correctly instructed concerning the government's burden of proving every element of the crimes charged, and the defendant is given a full opportunity to present his alibi defense in closing argument.

### III. THE ORDER OF WITNESSES

■ McCall next asserts that the district court abused its discretion by permitting the government to recall Agent Phillips in an attempt to impeach Phyllis Brown's alibi testimony. McCall cites Federal Rule of Evidence 613(b), which provides in pertinent part: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite

---

1. Pattern Instruction 6.02, the alibi instruction, states:

    (1) One of the questions in this case is whether the defendant was present [at the scene of the crime].

    (2) The government has the burden of proving that the defendant was present at that time and place. Unless the government proves this beyond a reasonable doubt, you must find the defendant not guilty.

party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." According to McCall, the government's failure to present the evidence when Phillips first testified during the case in chief or to confront Brown on cross-examination denied Brown the "opportunity to explain or deny the same."

We addressed a similar claim in *United States v. McGuire*, 744 F.2d 1197, 1204 (6th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1985), where we noted that "the prosecution should have confronted the [non-party] witness" with the alleged prior inconsistent statement on cross-examination, but we ultimately held that the district court's procedure was not reversible error because the defense could have recalled its witness as a surrebuttal witness. This is consistent with the advisory committee notes to Rule 613(b), which explain: "The traditional insistence that the attention of the witness be directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain and the opposite party an opportunity to examine the statement, with no specification of any particular time or sequence." Fed.R.Evid. 613 advisory committee notes. Because the defense in this case elected not to recall Phyllis Brown as a surrebuttal witness, arguing instead that the government's impeachment attempt was a failure, we hold that there was no abuse of discretion.

## IV. SUFFICIENCY OF THE EVIDENCE

■ McCall also argues that the evidence was insufficient to convict him, for two reasons: first, the defense's alibi evidence was "uncontroverted"; second, the jury's verdict was inconsistent. The first reason may be disposed of instantly. Beverly Hutchens's testimony alone was sufficient to neutralize McCall's alibi defense and sustain a conviction, because she affirmatively identified McCall as the robber of the bank. The defense misapprehends the standard of review on appeal, which requires the court to view the evidence "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Even if we were able to ignore the other compelling evidence against McCall—identification of his baseball cap and automobile, and the bait money recovered from Silenthia Brown—his conviction would still stand, based on Hutchens's identification.

■ McCall's second contention is that his acquittal on the firearm charge, 18 U.S.C. § 924(c), means he cannot be convicted under 18 U.S.C. § 2113(d), which prohibits bank robbery through "the use of a dangerous weapon or device." This argument rests upon the premise that a "firearm" under § 924(c) and a "dangerous weapon or device" under § 2113(d) are the same thing, and an acquittal on one requires an acquittal on both. The premise is faulty. A "firearm" under § 924(c) is given a very specific definition:

(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). A "dangerous weapon or device," on the other hand, may include, but is not limited to, a firearm. For instance, a toy gun may be considered a "dangerous weapon or device" under § 2113(d), *see United States v. Medved*, 905 F.2d 935, 939–40 (6th Cir.1990), *cert. denied*, 498 U.S. 1101, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991), even though a toy gun does not meet the above definition of "firearm." In the present case, because no gun was ever recovered, the jury could easily have found that the government failed to show the existence of a "firearm" beyond a reasonable doubt, but it could also have found that the government did show the use of a "dangerous weapon or device" beyond a reasonable doubt, based on the bank tellers' testimony that they saw what looked like a revolver. In other words, the jury could have found that the government had proved, at a minimum, the existence of a toy gun or a phony gun. Under *Medved*, this falls under the definition of "dangerous weapon or device," and as a result, we are not persuaded that the jury rendered an inconsistent verdict.

■ Furthermore, we should explain that even if the verdict was inconsistent, we still

would not be able to reverse. The Supreme Court has held that inconsistent verdicts do not give rise to a sufficiency of the evidence challenge, with the possible exception of a guilty verdict on mutually exclusive crimes. *See United States v. Powell,* 469 U.S. 57, 67–69, 105 S.Ct. 471, 478–79, 83 L.Ed.2d 461 (1984). Because McCall was clearly not convicted of mutually exclusive offenses, the verdict in this case, if inconsistent, remains "insulated" from review. *Id.* at 69, 105 S.Ct. at 479.

## V. SENTENCING ENHANCEMENT FOR BRANDISHING A FIREARM

■ Finally, McCall challenges the five-point sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(C). Although the jury acquitted McCall of using or carrying a firearm in the commission of the bank robbery (the § 924(c) charge), the district court added five points to his offense level, under the 1992 guidelines, for "brandish[ing], display[ing], or possess[ing]" a firearm. United States Sentencing Commission, *Guidelines Manual,* § 2B3.1(b)(2)(C) (Nov.1991). McCall now contends that the § 924(c) acquittal precluded the district judge from making this enhancement.

■ A district court's determination that a defendant possessed a firearm during an offense "is a factual finding subject to the clearly erroneous standard of review." *United States v. Duncan,* 918 F.2d 647, 650 (6th Cir.1990), *cert. denied,* 500 U.S. 933, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991). In *Duncan,* this court was faced with virtually the same sentencing issue as found here, and we held that an acquittal under 18 U.S.C. § 924(c) does not necessarily preclude a sentencing enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b). The rationale for this conclusion was that the government's burden is significantly lighter for sentencing purposes: "[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense." *Dun-*

*can,* 918 F.2d at 652.[2] The same rationale applies to McCall's sentence. Even though the government failed to prove beyond a reasonable doubt that McCall used or carried a firearm, the district court could logically have found that McCall did brandish, display, or possess a firearm by a preponderance of the evidence. Indeed, the district court explicitly cited Georgina Ansell's and Beverly Hutchens's testimony as the basis for the enhancement, stating that "none of these tellers indicated any doubt during the trial ... that this was, in fact, a firearm, and as a result, that is why subdivision C is being applied in this case." Sentencing Hr'g at 7–8. Given the unequivocal testimony at trial and the district court's clear citation in the record, we cannot say that the district court's factual finding was clearly erroneous. In addition, we discern no error in the application of U.S.S.G. § 2B3.1(b)(2)(C).

The district court's judgment is **AFFIRMED.**

---

2. We note, also, that after *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), an acquittal on a § 924(c) charge may not necessarily decide the issue of possession for another reason: "uses or carries" under that statute does not always mean the same thing as "possesses." *See United States v. Moore,* 76 F.3d 111, 113–14 (6th Cir.1996).