**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Damien DOUGLAS, Lorenzo Suttles,**
**DefendantsAppellants.**

**Nos. 02–6482, 02–6483.**

United States Court of Appeals,
Sixth Circuit.

June 7, 2004.

Steven S. Neff, Asst. U.S. Attorney, U.S. Attorney's Office, Chattanooga, TN, for Plaintiff–Appellee.

Lorenzo Suttles, Terre Haute, IN, pro se.

David L. McGuffey, Clements and McGuffey, Chattanooga, TN, for Defendant–Appellant Lorenzo Suttles.

Damien Douglas, Terre Haute, IN, pro se.

Paul Bergmann, III, Chattanooga, TN, for Defendant–Appellant Damien Douglas.

Before SUHRHEINRICH, GIBBONS, Circuit Judges; and LAWSON, District Judge.[*]

SUHRHEINRICH, Circuit Judge.

This is a criminal appeal from judgment following a jury trial entered against Defendants Damien Douglas[1] and Lorenzo Suttles involving a conspiracy to commit several armed robberies in the Eastern District of Tennessee. We AFFIRM.

## I. Background

Between early March 2001 and April 2001 a group of men carried out several armed robberies in the Chattanooga, Tennessee area. On March 15, 2001, two masked men, later determined to be codefendant Corey Young and Douglas, entered the Memorial Hospital Employees Credit Union ("Hospital Credit Union") in Chattanooga, Tennessee. Douglas kept watch at the door while Young, at gunpoint, demanded money from a teller. They made off with $3,565 in U.S. currency. They escaped in a getaway car driven by codefendant Timothy Douglas ("T.Douglas").

---

[*] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Defendant Douglas waived oral argument.

On April 2, 2001, two men, Suttles and codefendant Bryce Gilbert, entered a Taco Bell restaurant in Red Bank, Tennessee just prior to closing time. They first hid in the men's room and then in a storage closet, where they hid for approximately forty-five minutes until the restaurant lobby and drive-thru were closed. At that point they emerged from hiding. Suttles brandished a nine millimeter pistol. Gilbert bound the employees' and manager's hands and feet with duct tape. Suttles took the cash that the employees were counting and also money from persons of the employees, all of which totaled approximately $1,300.00. Suttles smashed the surveillance camera tape before he left the store.

On April 27, 2001, at 1:45 p.m., codefendant Dameyon Stamper, Gilbert, and Suttles entered the Allied Printers/IBEW 846 Papermill Credit Union ("Papermill Credit Union"), a federally insured credit union in Chattanooga. Suttles vaulted the swinging door into the teller area and proceeded to the back office, and the other two followed. Two women were in the back office. Suttles pointed his gun at them and ordered them to the ground. Gilbert then taped their eyes, mouths, wrists, and ankles. Stamper struck one of the victim tellers in the head with his hand until she told him where the money was hidden. After finding the money, the three men left the bank.

On September 5, 2001, the United States filed a criminal complaint against Suttles and Stamper alleging that they violated 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 924(c)(1)(A)(ii), based on the April 27, 2001 robbery of the Papermill Credit Union. On September 7, 2001, Suttles was arrested pursuant to a federal complaint and arrest warrant relating to the Allied Printers Credit Union robbery and transported in the backseat of an FBI Task Force vehicle. While en route to the Chattanooga FBI field office, Suttles confessed to the Papermill Credit Union and Taco Bell robberies.

On October 10, 2001, a federal grand jury returned a two-count indictment against Suttles and Stamper charging them with violations of 18 U.S.C. § 1951 and 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2(a) and (b), based on the April 27, 2001 robbery.

On October 23, 2001, the grand jury returned a superseding indictment against Stamper and Suttles charging them with aiding and abetting each other, and others known to the grand jury, with violations of 18 U.S.C. § 2113(a) and (d), and 18 U.S.C. § 2(a) and (b), based on the April 27, 2001 robbery of the Papermill Credit Union. Count Two charged Stamper and Suttles with using firearms in connection with that offense, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2(a) and (b).

On December 19, 2001, the grand jury returned a superseding indictment against Suttles, Stamper, and Douglas, charging them in Count One with conspiring with T. Douglas, Gilbert, Young, and others to commit armed robberies of the Hospital Credit Union, the Papermill Credit Union, and the Taco Bell restaurant. Count Two charged Defendant Douglas and Stamper with aiding and abetting one another in the March 15, 2001 armed bank robbery of the Hospital Credit Union, in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2(a) and (b). Count Three charged Defendant Douglas and Stamper with violating 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2(a) and (b) in relation to the credit union robbery charged in Count Two. Count Four charged Suttles and Defendant Douglas with violating 18 U.S.C. § 1951 and 18 U.S.C. § 2(a) and (b) in relation to the April 2, 2001 Taco Bell

robbery. Count Five charged Suttles and Douglas with brandishing a firearm during the Taco Bell robbery in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2(a) and (b). Count Six charged Suttles and Stamper with the armed robbery of the Papermill Credit Union in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2(a) and (b). Lastly, Count Seven charged Stamper and Suttles with violating 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2(a) and (b) for the firearm offense related to the Papermill Credit Union robbery charged in Count Six.

On December 6, 2001, Suttles filed several motions, including motions to suppress evidence and statements and a motion to sever. The district court held a hearing on December 19, 2001, and denied the suppression motion on December 21, 2001. On January 17, 2002, Suttles filed a motion to dismiss Counts One, Four, Five, Six, and Seven of the superseding indictment for lack of jurisdiction. On January 18, 2002, the district court denied Suttles's motion to suppress statements.

On February 22, 2002, the district court granted the Government's motion to consolidate on the grounds that the superseding indictment had, in effect, "consolidated all of the defendants and all of the charges into one case." On April 5, 2002, the district court denied Suttles's motion to dismiss for lack of jurisdiction and motion to sever.

On July 5, 2002, Douglas filed a motion in limine to exclude the introduction at trial of a reconstructed videotape. At the final pretrial conference on July 8, 2002, the district court denied this motion as well.

Douglas's and Suttles's trial began on July 9, 2002, and concluded on July 15, 2002, when the jury found Defendants guilty on all counts. Both Defendants made motions for judgment of acquittal at

the conclusion of the Government's case and renewed their motions after rebuttal.

On November 18, 2002, the district court sentenced Suttles to 492 months imprisonment and Douglas to 454 months imprisonment. Both Defendants received enhancements for obstruction of justice. Both Defendants timely appealed.

## II. Analysis

### A. Sufficiency of the Evidence

Both Suttles and Douglas assert that the evidence was insufficient to convict them. The applicable standard of review is well established. Evidence is sufficient to support a criminal conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This Court will reverse on the basis of insufficient evidence only if the judgment is not supported by substantial and competent evidence, whether direct or circumstantial, upon the record as a whole. *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992).

### 1. Suttles

Suttles argues that absent his confession, which he contends is unreliable and should have been suppressed, there is no credible evidence demonstrating his guilt beyond a reasonable doubt because each witness that implicated him admitted to "selective dishonesty." He therefore claims that his motion for a directed verdict should have been granted. Suttles's argument must be rejected.

Even if we set aside his confession, there is ample evidence to sustain Suttles's conviction. Coconspirator Gilbert testified that he committed the Taco Bell robbery

with Defendants Suttles and Douglas. Gilbert testified that he entered the restaurant with Suttles, hid with Suttles in the bathroom and the closet, and then robbed the business and the employees.

Gilbert's testimony was corroborated by the testimony of several other witnesses. One of the victims, Marcell Mitchell, testified that he recognized Suttles's voice, as Suttles had previously worked at the Taco Bell, and that he had known Suttles for approximately six years.

Jarvis Stewart, a little boy who observed the defendants leaving the robbery scene, described the men and the getaway car. Red Bank Police Department Lieutenant Dan Dyer described the physical evidence retrieved from the scene, which included the broken videotape, and some clothing in the restaurant's dumpster and a dumpster located on another property behind the Taco Bell. Further, the FBI had the videotape reconstructed, and a portion of it was played at trial. Gilbert testified as the tape was played and identified himself and Suttles as the individuals caught on tape. He identified Suttles as the individual with the gun in his hand.

To establish Suttles's involvement in the Papermill Credit Union robbery, the Government introduced the testimony of coconspirators Stamper and Gilbert. Gilbert testified that Stamper and Suttles came to his house on April 27, 2001, to discuss robbing the credit union. Gilbert testified that he, Stamper, and Suttles entered the credit union about 1:45 p.m., and that Suttles carried the black 9mm pistol he used in the Taco Bell robbery. Gilbert testified that Suttles pointed a gun at the tellers and ordered them to the ground, and that he, Gilbert, taped their eyes, mouths, wrists, and ankles.

Government witness Eugene Talley testified that he had ridden in Suttles's car the morning of the robbery with Suttles

and Stamper, at which time they discussed committing the credit union robbery. Talley testified that Suttles and Stamper asked him to go inside the credit union to see where the cameras were, but that he refused. Talley stated that they dropped him off at home. The Government also introduced expert testimony showing that carpet fibers consistent with those of the interior of Suttles's car were found on a baseball cap recovered from the robbery scene.

In sum, there is ample evidence, even without Suttles's confession, to support the jury's verdict against Suttles on Counts One, Four, Five, Six, and Seven. Suttles's claim that there was insufficient evidence because the Government's witnesses were unreliable is an attack on their credibility, which challenges the quality of the government's evidence, not its sufficiency. *See, e.g., United States v. King*, 272 F.3d 366, 370 (6th Cir.2001).

### 2. Douglas

■ Douglas contends that the Government "failed to introduce any scientific evidence or unbiased accomplice testimony against him at trial to support his convictions in the [Hospital Credit Union] and/or the Taco Bell robbery cases." He further claims that since the evidence is not sufficient to support those convictions, his convictions for the related convictions under 18 U.S.C. § 924(c) should be reversed as well.

There is sufficient evidence to support Douglas's involvement in the Hospital Credit Union and Taco Bell robberies. Coconspirator Young testified that he committed the Hospital Credit Union robbery with Douglas. Young testified that on the evening of March 14, 2001, he met with Douglas and T. Douglas at Defendant Douglas's house and that the three

planned to rob the credit union the next morning. Young stated that the next morning, they had coconspirator Stamper make a fake homicide call to distract police attention while they robbed the credit union.

Young testified that he and Douglas entered the Hospital Credit Union and that he, Young, jumped the counter and demanded money from the teller while Douglas acted as a lookout at the door. Young further stated that Douglas told him to shoot the teller and that as Young prepared to depart, Douglas told him to go back to the teller and get the rest of the money. After running out of the bank, they were picked up by T. Douglas, who was waiting in a gold Cadillac Seville. Young stated that they drove up to a dead end, got out of the car, and ran into some woods. Young indicated that, at that point, he became separated from T. Douglas and Douglas, ran to the porch of an empty duplex, and hid the gun and the money in a paint can. Officers took Young into custody, but released him after they took his fingerprints and shoes and questioned him.

Young testified that he called Douglas after he got home and then went to Douglas's house. They decided to retrieve the money, and coconspirator Greg Scott took them to get it. Upon retrieving the money, they divided it between Defendant Douglas, Young, and T. Douglas, and gave Scott $100.

T. Douglas also testified that he met with Young and Defendant Douglas on March 14, 2001, to plan the Hospital Credit Union robbery and that all agreed to participate. T. Douglas confirmed that Stamper made the fake phone call. T. Douglas testified that he drove Young and Douglas to the credit union, gave Young a .380 semi-automatic pistol, and told them to hold the door open during the robbery to avoid being locked in the credit union. T. Douglas also confirmed that he waited in the getaway car while Defendant Douglas and Young entered the credit union. T. Douglas also stated that, after they fled the car, Young became separated from them. T. Douglas further testified that they later retrieved the money from the paint can and divided it among themselves. In short, there is ample evidence to prove Defendant Douglas's involvement in the Hospital Credit Union robbery. Thus, the evidence supports the jury verdicts on Counts Two and Three.

The record also supports Douglas's involvement in the Taco Bell robbery. Gilbert testified that Douglas waited in the getaway car at an apartment complex behind the restaurant. Further, government witness Stewart testified that on the evening in question he saw a car parked in front of the dumpster and that two men came rushing toward it, threw some items in the dumpster, got in the car, and drove away. He confirmed that three men drove away.

■ Douglas also argues that he should have been acquitted of Count One, the conspiracy count, because the Government failed to produce any evidence of his involvement in the Papermill Credit Union robbery. The record does not reflect, and the superseding indictment does not mention, any involvement by Douglas in the Papermill Credit Union robbery. Douglas's lack of involvement in one aspect of the conspiracy is not grounds for reversal. "A conspirator need not have agreed to commit every crime within the scope of the conspiracy, so long as it is reasonable to infer that each crime was intended to further the enterprise's affairs." *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir.1990). Further, each conspirator need not participate in every phase of a criminal

enterprise, as long as there is agreement to contribute to a common goal.

### B. Severance

■ On January 30, 2002, the Government filed a motion to consolidate the cases against Stamper, Suttles, and Douglas, in light of the superseding indictment filed on December 19, 2001. Suttles opposed the motion as he had previously filed a motion for severance. Douglas joined that opposition. On April 5, 2002, the district court denied Suttles's motion, holding that Suttles had not met his burden of demonstrating substantial, undue, or compelling prejudice that would result from a joint trial. On July 8, 2002, at the final pretrial conference, the district court again denied the joint motion.

A district court's denial of a motion for severance is reviewed for abuse of discretion. *United States v. Walls*, 293 F.3d 959, 966 (6th Cir.), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 543, 154 L.Ed.2d 431 (2002).

"As a general rule, persons jointly indicted should be tried together because 'there is almost always common evidence against the joined defendants that allows for the economy of a single trial.'" *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir.2002) (quoting *United States v. Phibbs*, 999 F.2d 1053, 1067 (6th Cir.1993)), *cert. denied*, 537 U.S. 1244, 123 S.Ct. 1380, 155 L.Ed.2d 217 (2003); Fed.R.Crim.P. 8(b). Severance is proper "'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)); *see also* Fed. R.Crim.P. 14.

Neither Defendant made that showing here. Each Defendant makes merely a conclusory spillover argument based on the armed robberies they were not charged with-Douglas was not charged in the Papermill Credit Union robbery, and Suttles was not charged in the Hospital Credit Union robbery. However, severance is not appropriate simply because a defendant may have a better chance at acquittal. *Id.* Here, both defendants were charged with multiple overt acts of a single conspiracy charge. This argument must be rejected.

### C. Effect on Interstate Commerce

■ Suttles moved to dismiss Counts Four and Five on the grounds that the Hobbs Act, 18 U.S.C. § 1951, is an unconstitutional exercise of congressional power, either facially or as applied to him. Suttles's constitutional challenge to his conviction under the Hobbs Act is a question of law reviewed *de novo*. *United States v. Dupree*, 323 F.3d 480, 484 (6th Cir.2003).

As Suttles acknowledges in his brief, this Court has already ruled that the Hobbs Act survives *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (holding that Congress's enactment of the GunFree School Zones Act of 1990 exceeded the scope of its commerce clause power). *See United States v. Valenzeno*, 123 F.3d 365, 367–68 (6th Cir.1997). We have further held that a conviction under the Hobbs Act requires only a showing of a *de minimis* effect on interstate commerce. *United States v. Smith*, 182 F.3d 452, 456 (6th Cir.1999); *see also United States v. Dupree*, 323 F.3d 480, 485 (6th Cir.2003) (discussing *Smith*). This Court has also held that although robbing an individual of money may not meet this *de minimis* standard, robbing a business that is engaged in commerce will meet this standard. *United States v. Wang*, 222 F.3d 234, 238 (6th Cir.2000) (noting that "[t]he Hobbs Act's *de minimis* standard survives *Lopez* by virtue of the

aggregation principle"). *See also Dupree,* 323 F.3d at 484–85 (holding that robbery of an armored car messenger, who had just picked up the money from a business engaged in interstate commerce, established jurisdictional predicate for the defendant's prosecution under the Hobbs Act).

Suttles contends that there is no evidence in the record that the Taco Bell robbery affected interstate commerce. To the contrary, the Government sufficiently established the jurisdictional predicate for both Hobbs Act violations here. The Government presented testimony that Defendants stole business proceeds from each victim's business. Janice Jackson, a Taco Bell manager for eight stores, testified that the total loss to Taco Bell that night was $1,559, that the owner of that Taco Bell was a company located in Birmingham, Alabama, and that food supplies were brought by truck from Georgia. This evidence easily meets the *de minimis* test.

### D. Fifth Amendment Right to Counsel

Suttles argues that the district court erred in admitting his confession over his objection that it was obtained in violation of his Fifth Amendment right to counsel. At the suppression hearing held on September 19, 2001, Special Agent James Melia testified that after Suttles's arrest and while en route to the FBI Field Office, he gave Suttles the *Miranda* warning that Suttles indicated that he understood his rights, and also that he wanted his attorney. Melia said that he did not ask him any questions at this point. Melia testified that Suttles continued talking and asked about the evidence against him. Melia stated that he let Suttles look at the arrest warrant with the attached criminal complaint. Suttles continued to talk, but Melia stated that he, Melia, did not say much except to explain about the booking process.

Melia further testified that once they arrived at the FBI field office, Suttles was processed and fingerprinted. Melia stated that he did not ask Suttles any questions during this time but that Suttles continued to talk and asked Melia to call his attorney. Melia then contacted the federal magistrate's office to request an initial appearance, and also asked the office to contact Suttles's attorney and ask him to meet them at the courthouse.

Melia stated that after fingerprinting Suttles, he briefly left the processing room. When he returned, Suttles told Melia that he needed to talk to him and asked if the other officer in the room could leave. Melia sent the officer out of the room, although the officer remained at the processing window. Melia indicated that he reminded Suttles that he had already requested an attorney, but that Suttles replied that he had to talk to Melia right then. Melia testified that Suttles started to cry and confessed to the Papermill Credit Union robbery and the Taco Bell robbery. The three men then paused for a cigarette.

Melia stated that after Suttles had finished his cigarette, Melia asked Suttles if he wanted to give a full and detailed confession to the robberies in which he was involved, and that Suttles assented. Upon returning to the FBI office, Melia read Suttles another waiver of rights form and gave it to him to review. Melia testified that Suttles told Melia that he understood his rights and that he wanted to talk without an attorney present, even though he had previously asked for one. Suttles signed the rights waiver form and then described the Taco Bell and Papermill Credit Union robberies.

In denying Suttles's motion to suppress, the district court held that

Agent Melia properly issued a *Miranda* warning to Suttles and properly terminated any further interrogation when Suttles indicated that he only wanted to talk with the agents through counsel. By later declaring, "I gotta talk," Suttles showed a clear willingness and desire to talk about his criminal investigation. This initiation satisfies the first step in the inquiry. After Agent Melia again warned Suttles of his right to an attorney, Suttles insisted on talking, made a confession, and engaged in other conversation. Agent Melia, for the third time, gave Suttles a *Miranda* warning and obtained a signed waiver. Suttles continued his confession and made another confession subsequent to his initial appearance. Based on all of these circumstances-the continuing confessions by Suttles despite the repeated warnings by Agent Melia-this Court concludes that Suttles voluntarily waived his Fifth Amendment right to have an attorney present during custodial interrogation. No Fifth Amendment violation occurred and his statements are admissible.

In reviewing the denial of a motion to suppress, we review a district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Cole*, 315 F.3d 633, 636 (6th Cir.2003).

A defendant in custody must first be advised of his Fifth Amendment right against self-incrimination and must validly waive that right. *Id.* (citing *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). However, " '[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by' the holding in *Miranda*." *Id.* (quoting *Miranda*, 384 U.S. at 478, 86 S.Ct. 1602).

If the defendant has invoked his right to counsel, officers must cease further questioning outside counsel's presence unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The government has the burden of proving that the defendant initiated the discussion with the officers and that he validly waived his right to counsel and to remain silent. *Id.* at 486 n. 9, 101 S.Ct. 1880.

■ The district court credited Government witness Melia's testimony that Suttles was given his *Miranda* warnings when arrested. The court further credited Melia's testimony that once Suttles asserted his right to counsel, no further questioning occurred. Although Suttles asserts that Melia continued questioning him after Suttles initially invoked his right to counsel, Melia testified that it was Suttles who continued talking after invoking his right to counsel. The district court further credited Melia's testimony that Melia did not question Suttles during the booking process and that Suttles insisted on talking despite another *Miranda* warning and a reminder that he had invoked counsel.

Thus, the Government has met its burden, and Suttles has not shown that the district court clearly erred in crediting Melia's testimony. Further, Suttles presented no evidence and simply denied the agent's testimony. Moreover, at trial, Melia's testimony was corroborated by the testimony of Chattanooga Police Department Officer Matt Hennessee, who stood outside the room and overheard Suttles's confession. In short, the district court did not err in admitting the confession.

### E. Hearsay Evidence

■ Defendant Douglas asserts that the district court abused its discretion in excluding on hearsay grounds a letter he

offered allegedly written by Stamper to Defendant Douglas's mother, Kathy Douglas. While Kathy Douglas was on the stand, Douglas offered the letter to rebut Stamper's testimony that Defendant Douglas perpetrated the Hospital Credit Union robbery, and also to impeach Stamper. The district court ruled that the letter was hearsay and improper impeachment and that Rule 613(b) of the Rules of Evidence barred its introduction because Douglas had not asked Stamper to explain or deny the existence and contents of the letter when he cross-examined him.

We review the district court's evidentiary ruling for abuse of discretion. *Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 716–17 (6th Cir.1999) (noting that all evidentiary rulings are reviewed for abuse of discretion, including alleged hearsay errors). An abuse of discretion occurs if the lower court's "decision is based on an error of law or a clearly erroneous factual finding." *United States v. McGahee,* 257 F.3d 520, 530 (6th Cir.2001).

Rule 613(b) of the Federal Rules of Evidence requires that, if extrinsic evidence of a prior inconsistent statement is offered into evidence, the witness must first be given an opportunity to explain or deny the statement. Fed.R.Evid. 613(b); *United States v. McCall,* 85 F.3d 1193, 1196–97 (6th Cir.1996).

The district court did not err in excluding the letter because Douglas had not given Stamper the opportunity to explain or deny the existence and contents of the letter when counsel had cross-examined him earlier in the trial. Further, although Douglas had the opportunity to recall Stamper as a witness to ask him about the letter, he chose not to do so. *Cf. McCall,* 85 F.3d at 1197 (holding that the district court did not abuse its discretion by permitting the government to recall its witness in an attempt to impeach the defense

witness's alibi, despite the government's failure to present the evidence when its witness first testified; defense could have recalled its witness as a surrebuttal witness; noting that advisory committee notes to Rule 613 do not require any particular time or sequence); *United States v. McGuire,* 744 F.2d 1197, 1204 (6th Cir. 1984).

Moreover, the letter was written prior to Stamper's decision to plead guilty and cooperate with the United States. Stamper admitted during his trial testimony that he originally had denied participation in the robberies until April 26, 2002, when he gave a statement to authorities. Thus, as the district court ruled, the letter was not inconsistent with Stamper's testimony in any event.

### F. Obstruction of Justice–Suttles

■ Suttles testified at his trial, denying his involvement in robberies, denying that he had confessed to an FBI agent, and claiming a false alibi. The district court enhanced Suttles's offense level by two levels based on his perjurous trial testimony.

Section 3C1.1 of the Sentencing Guidelines authorizes a two-level enhancement if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1(A) (2001). The application notes provide a non-exhaustive list of the types of conduct covered by the Guideline, including "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, cmt. n. 4 (2001). "Perjury occurs when a witness, testifying under oath or affirmation, 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or

faulty memory.'" *United States v. Lawrence*, 308 F.3d 623, 631–32 (6th Cir.2002) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)).

Although a defendant's right to testify at trial does not include a right to commit perjury, a defendant who is found guilty must not be penalized under § 3C1.1 simply because he testified on his own behalf. *Id.* at 632. Thus, upon a defendant's objection, a district court must make independent findings, addressing each element of the putative perjury or, alternatively, a finding that encompasses the predicates for perjury. *Id.*

In accordance with these precepts, the district court ruled as follows:

> [I]t's evident in this case that the defendant did not testify truthfully.... Number one, he denied both the Taco Bell and the Allied Printers Credit Union robberies. Number two, he said he was home all day April 2nd, 2001. Number three, he denied that he confessed to Agent, FBI Agent Melia after he was apprehended. These were material statements, obviously, because they reflected directly on his guilt or innocence in this case. And I believe that the defendant acted intentionally in making those statements. So, the long and short of it is that he committed perjury. Yes, a defendant has a right to testify, no, a defendant does not have a right to commit perjury.

In short, the district court's factual findings are not clearly erroneous and it made the specific findings required by precedent.

■ Suttles also objects to the district court's imposition of the statutory mandatory consecutive twenty-five year sentence imposed as a result of his second § 924(c) conviction. However, as Suttles acknowledges in his brief, both the Supreme Court and this Court have held that the enhanced twenty-five year penalty applies to second or subsequent convictions charged in the same indictment. *Deal v. United States*, 508 U.S. 129, 133, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993); *United States v. Burnette*, 170 F.3d 567, 571–72 (6th Cir. 1999). The district court's application of the twenty-five year consecutive sentence on the second § 924(c) conviction was not erroneous.

## G. Obstruction of Justice–Douglas

■ The district court enhanced Douglas's offense level for obstruction of justice based upon letters he wrote asking a friend, Lamichael Harris, to provide false alibi testimony on his behalf. Douglas asked Harris to lie about Douglas's whereabouts on March 15, 2001, the day of the Hospital Credit Union robbery. The district court specifically found that in the letters, Douglas asked Harris to lie about his whereabouts on March 15, 2001, and that "the idea was to set up a false alibi obviously." The court expressly found that, based on the contents of these letters, Douglas acted intentionally, on a material matter, and that the information was false. The court concluded that Douglas's conduct met the criteria for suborning perjury.

As with the previous enhancement for Suttles, the district court's fact findings are not clearly erroneous, and its ruling was not in error. In any event, Douglas does not appear to argue that the district court's findings were clearly erroneous or that its legal ruling was in error, but complains that the court should not have based the enhancement on the testimony of a witness whom Douglas did not call. He provides no authority to support this claim, however, and indeed, it is without merit.

### III. Conclusion

Defendants' convictions and sentences are AFFIRMED.