NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0291n.06

No. 13-1312

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 18, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| WAYLON PEGO, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |

BEFORE:    KEITH, COOK,  and KETHLEDGE, Circuit Judges

**DAMON J. KEITH, Circuit Judge.**  A jury convicted Waylon Pego on multiple counts of domestic violence-related offenses, which he perpetrated over the course of five years.  Pego alleges that he incurred substantial prejudice from the district court's failure to provide certain limiting instructions, that its evidentiary rulings were erroneous, that the trial was tainted by prosecutorial misconduct, and that the admission of opinion testimony from a domestic abuse expert denied him a fair trial.  Although in one instance we find the lack of a limiting instruction troubling, we are firmly convinced that the overwhelming evidence against Pego otherwise precludes a finding of the requisite prejudice and thus reversal is unwarranted.  Moreover, we are not persuaded that the court's evidentiary rulings, the prosecutor's actions, or the admission of opinion testimony were improper.  Accordingly, we **AFFIRM** Pego's convictions.

## I. BACKGROUND

A brief recitation of the underlying facts will provide context to Pego's appeal. On May 9, 2012, Pego was indicted in the Eastern District of Michigan on charges of unlawful imprisonment, assault with a dangerous weapon with intent to do bodily harm, domestic assault by a habitual offender, witness tampering, interfering with electronic communications, assault causing serious bodily injury, and aggravated sexual abuse. R. 1. A superseding indictment was later filed on July 25, 2012. R. 17. The charges stem from acts Pego committed against female victims with whom he had relationships from 2007 to 2012. *See* R. 51, Tr. II. At trial, the government introduced evidence of the abuse from three victims: N.M., T.H., and A.H. *See id.* The testimony establishes that Pego abused, sexually assaulted, battered, intimidated, harassed, and, in one way or another, imprisoned the three women. *See id.* Pego's abuse of A.H., the last victim, triggered his arrest (he was about to hit A.H. with a golf club when the police arrived). *Id.* at PgID 438-39. Once in custody, Pego telephoned his family and implored them to attempt to convince A.H. to lie about the abuse. *Id.* at PgID 570, 587-88. A jury trial commenced on November 14, 2012. On November 15, the jury convicted Pego on sixteen charges. R. 45.

## II. ANALYSIS

To support the charge of domestic assault by a habitual offender, the government must prove that Pego "ha[d] a final conviction of at least 2 separate prior occasions . . . that would be . . . any assault, sexual abuse or serious violent felony against a spouse or intimate partner." 18 U.S.C. § 117. At trial, Pego stipulated that he indeed had two such convictions, which were read into the record before the jury. The prosecutor referenced this stipulation in both the opening and closing

arguments. ("[E]ven before this first victim had this happen to her back in 2007, you'll hear that the Defendant had two or more assault or sexual assault or violent felony convictions against a spouse or intimate partner." R. 50, PgID 372). On appeal, and for the first time, Pego alleges that the district court was required to *sua sponte* provide a limiting instruction to ensure that the jury would not use the prior convictions for their forbidden propensity inferences.

Generally, a defendant may assign error to the omission of a criminal jury instruction only when the defendant has requested the instruction and objected to its omission before submission of the case to the jury. *See* FED. R. CRIM. P. 30. If the defendant has failed to request a particular instruction or object to its omission, this court reviews the omission only for plain error. *See United States v. McCall*, 85 F.3d 1193, 1195-96 (6th Cir. 1996). Indeed, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *United States v. Olano*, 507 U.S. 725, 731 (1993) (quoting FED. R. CRIM. P. 52(b)). There are three prongs to a plain error analysis: (1) there must be error, (2) this error must be plain, and (3) the error must affect substantial rights. *Id.* at 732-34.

Assuming without deciding that the first two prerequisites for relief are satisfied, we conclude that, on the basis of overwhelming evidence against the defendant, the third prong is not. For an error to affect substantial rights, it "must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734.[1] Where the available evidence

---

[1] The Supreme Court has "noted the possibility that certain errors, termed structural errors, might affect substantial rights regardless of their actual impact on an appellant's trial." *United States v. Marcus*, 560 U.S. 258, 263 (2010) (internal quotations omitted). The failure to provide a limiting instruction here does not appear to constitute such a structural error. *See id.*

is "so conclusive," *United States v. Neal*, 344 F.2d 254, 256 (6th Cir. 1965) (*per curiam*), or "overwhelming" *United States v. Dixon*, 273 F.3d 636, 640 (5th Cir. 2001), the outcome of the proceedings are not affected, and thus no prejudice will arise. This is the case here. Although the introduction of prior convictions of similar offenses is always subject to potential misuse, the sheer amount of testimony elicited at trial regarding Pego's domestic abuses, as well as his own incriminating attempts to conceal the crimes, assure us that no prejudice was incurred, and that Pego's substantial rights were not affected.

Nevertheless, we are compelled to comment on the trial court's failure to provide a limiting instruction. Two cases, *Evans v. Cowan*, 506 F.2d 1248 (6th Cir. 1974) and *Dawson v. Cowan*, 531 F.2d 1374 (6th Cir. 1976), held that the respective district courts committed plain error when, under similar circumstances, the courts failed to give a limiting instruction. We note that although *Dawson* and *Evans* continue to afford defendants appropriate and necessary constitutional protections, the duet does not impose a *per se* rule that it is plain and reversible error for the trial court to fail to *sua sponte* give a cautionary instruction regarding evidence of prior misconduct. *See United States v. Cooper*, 577 F.2d 1079, 1089 (6th Cir. 1978). Nor are we inclined to find so here, given the extensive evidence of Pego's guilt. However, we wholeheartedly "acknowledge that it would have been the better part of discretion for the court sua sponte to have given a cautionary instruction limiting the jury's consideration of the evidence." *Id*. Indeed, the risk of prejudice with respect to similar acts and their forbidden propensity inferences are notoriously high. Accordingly, we advise future courts to exercise an abundance of caution and circumspection when encountering such scenarios.

Pego's remaining arguments are largely without merit. He argues that the introduction of certain threats which he made constituted improper prior bad act evidence, and that the failure to give a limiting instruction with regard to the threats was unduly prejudicial. In his opening statement, the prosecutor stated the following: "And as I mentioned before, he told her that if she told anybody, he was going to kill her. And he also talked about this gentleman that disappeared in Mt. Pleasant about five years ago, Auggie Floyd, who has never been found and he says, my family got away with killing Auggie Floyd." R. 50, PgID 376.

Defense counsel objected to this statement and a sidebar was held. The judge, at the sidebar conference, advised that it was "to be admitted as a result of the fact, as evidence of, a threat in the context of the relationship between the Defendant and the woman." *Id.* at 378. After the sidebar, the prosecutor continued:

> So this Auggie Floyd that disappeared, you're going to hear a little bit of background to see what's going on. We're not here to prove whether or not his family had anything to do with this case or not. That's not the case we are here for today. The point is, he used the threat that his family was involved in this and we got away with that murder and I'll get away with killing you . . . . So that's how he used that.

*Id.* at PgID 378-79.

During direct examination, the government elicited testimony to further establish the veracity of these threats. R. 51 at 445, 531-32. Pego claims that the introduction of this testimony constituted prior bad acts in violation of Federal Rule of Evidence 404(b).[2] We disagree. The

---

**2** Pego also objects to the judge's failure to provide a final limiting instruction. While it is true that one was never given in the final jury instruction, defense counsel never asked for one. In fact, after the court's final jury instructions, the defense stated that they were satisfied and that they had no objections. *See* R. 52, Tr. III, PgID 718. Accordingly, Pego's objection is waived unless he can show plain error affecting substantial rights. *See United States v. Christian*, 786 F.2d 203, 213-14 (6th Cir. 1986). Again, on the basis of robust and conclusive evidence against the defendant and the prosecutor's

testimony was highly probative of Pego's manipulation of his victims. The evidence showed that he constantly threatened and intimidated his victims to dissuade them from telling the authorities, which enabled him to continue the abuses. The forbidden inference, that he was a violent person generally, and thus would continue to do violent things, is severely undermined by the massive amount of evidence against Pego, and is, in any event, harmless beyond a reasonable doubt. *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013). Accordingly, we find no error.

Next, Pego alleges multiple instances of prosecutorial misconduct, which are similarly without merit. He first alleges that the prosecutor's *voir dire* of a potential juror who ultimately was not selected for trial was improper. The potential juror had been employed as a prison guard for over 25 years. R. 50, Tr. I, PgID 312. The potential juror stated that if he were selected he would evaluate a witness's credibility for falsity. *Id*. at PgID 314. The prosecutor asked the potential juror if, in his capacity as a corrections officer, he had experience with people who had lied. *Id.* at PgID 312. Pego primarily takes issue with this question posed by the prosecutor: "[in your time as a corrections officer,] sometimes when people say they didn't commit a crime or do something, it doesn't always mean that they didn't?" *Id*. at 314. The potential juror answered yes. *Id*.

Pego's failure to object renders our review for plain error. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). Under these circumstances, this Court only reverses a conviction if we determine that the defendant did not get a fair trial by a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Pego argues that the prosecutor's question was improper as it implied

---

own cautions as to how the statement was to be used, the failure to provide a limiting instruction does not rise to the level of plain error.

a special knowledge based upon facts outside the record. *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). The argument follows that the prosecutor implied to the *other* jurors that the corrections officer (and the prosecutor) had a special knowledge of convicted criminals who falsified testimony and that this would invite the other jurors to disregard the presumption of innocence. This argument is groundless and does not demonstrate an abuse of discretion, let alone plain error. It is within the scope of the prosecutor's *voir dire* to ask potential jurors about their experiences evaluating the quality of information they receive. Even still, this juror was not even selected, further reducing the possibility that Pego was prejudiced. Accordingly, his argument fails.

Pego also objects to the prosecutor's opening statement on grounds that it improperly introduced his prior violent history. The essential issue precluding Pego from succeeding on this ground is that every reference of violent or otherwise criminal conduct articulated in the opening statement was actually substantiated by trial testimony. To provide a tenor of the opening statement, the prosecutor began by stating:

> We're here today because the Defendant in this case is a violent, controlling manipulator who abuses women. He hits them, he kicks them, he slams their head into doors and walls, he strangles them to the point they can't breathe. When they try [to] call for help, he breaks their phones, he breaks their laptops, any form of communication they have with the outside world.

R. 50, Tr. I, PgID 372.

Again, Pego's failure to object to this testimony limits our review to plain error only. *Johnson*, 520 U.S. at 466-67. Of course, the prosecutor may not misrepresent the evidence, nor may he make derogatory comments about the defendant. *See Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir. 2005). However, it is well within the prosecutor's discretion to inform the jury what he or she

expects the evidence will show.  *United States v. Wells*, 623 F.3d 332, 343 (6th Cir. 2010).  The

evidence admitted at trial supported the prosecutor's statements—as per the testimony, the evidence

did indeed show that Pego abused women, was violent, manipulated the abused, *etc*.[3]  Photographs

admitted at trial corroborated those aspects of the opening statement relating to Pego's ability to

control his victims by destroying their contact with the outside world.  Tr. II, PgID 439-44.  Further

still, a phone call, verified to be from Pego,  provided his apology to one of his victims.  Tr. Ex. 49.

Under any metric, the opening statement, while forceful, did not mislead nor was it improper.

During the prosecutor's opening statement, the prosecutor also referenced the anticipated

testimony of victim T.H., whom he anticipated would testify as to an 18 month period in which Pego

sexually assaulted her.  *See* Tr. I, PgID 387.  This reference was based on T.H.'s grand jury

testimony, which was consistent with the prosecutor's references.  Upon direct examination,

however, T.H. recanted.  *Id*. at 532-37.  Instead of detailing a period of sexual assaults for a year and

a half, she stated that only two sexual assaults occurred.  *See* R. 52, Tr. III, PgID 532-37.  After

impeaching T.H., the government decided to voluntarily dismiss the counts which related to this

inconsistency.  *Id*. at 583.  It is unclear on what specific grounds Pego challenges this issue on

appeal, other than the fact that it was "prejudicial."  In any event, no objection was lodged, and

nothing "plainly erroneous" occurred.  *See Johnson*, 520 U.S. at 466-67.

Pego also objected to the testimony of A.H., who testified to multiple prior instances of

sexual misconduct Pego committed against her.  Pego failed to object to this testimony at trial.  On

---

[3]  Pego also takes issue with his characterization as a "batterer" in the prosecutor's closing
argument.  R. 52 at 160-61.  For the same reasons above, this argument is also groundless.

appeal, Pego fails to acknowledge Federal Rule of Evidence 413(a), which explicitly permits such evidence.[4] The testimony falls squarely within the permitted ambit of the Rule, and is thus fatal to his claim.

Lastly, Pego challenges the government's introduction of opinion testimony. At trial, the government called Holly Rosen, who testified to the jury about certain issues pertaining to domestic violence. *See* R. 52, Tr. III, PgID 600. According to her testimony, she "[was] to educate the jury about batterer tactics and non-intuitive victim response and contacts so that [the jury] can make an informed decision." *Id*. at 602-03. On cross examination, defense counsel asked Rosen if she formed an opinion, to which she replied: "I formed an opinion about agreeing to testify or not if it's within my scope." *Id*. at 674. In clarifying as to what would be the appropriate scope of her testimony, she later affirmed that she would not testify unless she believed that domestic violence occurred. *Id.*[5]

We review the decision to allow a witness to offer opinion testimony for an abuse of discretion. *United States v. Cunningham*, 679 F.3d 355, 377 (6th Cir. 2012). On appeal Pego claims that this "opinion testimony" runs afoul of Federal Rule of Evidence 702, and cites two cases which stand for the proposition that an opinion witness may not provide their judgment as to the

---

[4] "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant."

[5] This was elicited on cross examination—the argument follows that, implicitly, she provided an opinion as to whether Pego was innocent or guilty, which would be forbidden, technically. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). Pego has not discovered a legal circumvention, however, as he has invited any potential error by posing the question himself. In light of Rosen's multiple avowals that she was not called to provide an opinion on the likelihood of abuse, as well as the overwhelming evidence against Pego generally, we do not find that he has established the requisite prejudice. *See United States v. Lawrence*, 735 F.3d 385, 431 (6th Cir. 2013).

credibility of witnesses on grounds that it would usurp the jury's judgment. *See United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993); *United States v. Libby*, 461 F. Supp. 2d 3, 7 (D.D.C. 2006). Pego's argument is flawed because the opinion witness never rendered an opinion that could be classified as usurping the jury's task of gauging credibility or rendering an opinion on an ultimate issue. None of Rosen's testimony on direct examination offered an opinion as to the verisimilitude of a battering charge. Nor was there anything else improper with Rosen's testimony; Rosen was highly qualified to offer the testimony and the trial judge correctly informed the jury as to how they were to utilize her testimony. Accordingly, his challenge to this testimony is baseless.

### III. CONCLUSION

In short, the evidence establishing Pego's guilt was overwhelming. Though we advise future district courts to implement appropriate precautionary measures when faced with the introduction of prejudicial information, we see no reason to reverse Pego's conviction in this case. **AFFIRMED.**